Joseph Lalli v. General Nutrition Corporation et al. May it please the Court. My name is Matthew Jaczynski. I represent the plaintiff, Joseph Lalli. May I reserve two minutes for rebuttal, Your Honor? You may. Thank you. Your Honors, this case begins and ends with this Court's decision in the O'Brien v. Taunabaguam case. In that decision, this Court concluded that an employer may not use the fluctuating workweek method of overtime calculation. That means that the employer may not spread an employee's salary over all hours worked, unless, among other things, the employee receives a fixed amount for his non-overtime or straight-time pay. But you're saying in your argument here that a fixed time seems to mean only regular hours, that if someone is paid on the basis of a percentage, the same percentage, every week, as an incentive for sales on top of that, you can't use this method. I'm not sure that I think that O'Brien can carry the weight that you would like it to carry, given the regulations and the fact that it is a fixed salary when you get through with it. Let me see if I can convince you otherwise, Your Honor. In O'Brien, what this Court made clear was that a fixed minimum is insufficient. What we have here is a fixed minimum. There is a base wage. It is fixed. Nobody disputes that. But what O'Brien said was to decide whether the straight-time compensation is fixed, what the Court should look at is what's included in the calculation of the regular rate of pay. And I'd like to draw the Court's attention specifically to the shift differential pay at issue in O'Brien. That was you get $10 in any week in which you worked a night shift. It has nothing to do with how many hours you worked. You just get a $10 bonus for having worked a night shift that week. And the Court said that because that shift differential pay is included in the regular rate, because it is compensation for non-overtime hours, it has to necessarily cause the base, essentially salary in O'Brien, to vary. It's no longer a fixed amount for straight time. The commissions at issue in this case are no different. The commissions at issue in this case must be, and nobody disputes this, included in the regular rate. Commissions are compensation for non-overtime hours. I understand the way O'Brien's written, but strictly speaking, was that shift differential pay analysis necessary to the decision in O'Brien? Well, I think it was. In other words, if you looked at other aspects of the things included, some of those are more readily distinguishable from commission work, and even from shift differential pay, than shift differential pay itself is. Isn't that true? Well, so let me accept that arguendo and say, okay, let's assume that, let's look at the other thing. The other thing that was important in O'Brien was $8, an additional, excuse me, if you worked more than eight hours in any day. Because that's different than the commission circumstance, because that's arguably different in the sense that then it's different pay for different hours, as opposed to just changing the amount of pay for the same hours. And let me explain why that's a distinction without a difference. Okay. So I'll focus on that there was compensation in O'Brien, additional compensation for any day in which you worked more than eight hours. And it doesn't matter whether you still worked under 40 hours in the course of the week. The court's analysis there was also to say that the non-premium portion of that pay had to be included in the regular rate. And so the court's analysis in O'Brien and the conclusion that that pay, which did vary in essence by the number of hours at least in a day, the court's conclusion that that pay also caused the hourly, excuse me, caused the straight time compensation to vary was also driven by the fact that a portion of it. Are you talking about the last half of the opinion in O'Brien or the actual analysis of whether the fluctuating work week was or was not applicable? Because the question of whether the augmentation is included is a different question than whether the reg applies. I'm talking about the fluctuating work week. Okay. And it's on 289 of the court's decision, beginning on 289. And. And 289 is where it says the officer's weekly straight time compensation also varied depending on the number of hours worked. And it did. And it did. And, again, accepting arguendo that we can distinguish it on that ground, the analysis was dependent upon the fact that a portion was included in the regular rate, if I may. I think one of the things you're hearing is that the briefs may not have convinced the court, at least yet, who knows, and I only speak for myself, that O'Brien controls here. So if that's true, you're probably better off spending your time on why, even if O'Brien doesn't control the policy interpretation and reading that you're putting forward, is the one we should adopt ourselves. Yes, Your Honor. And I will. I have the site, so if I may, with respect to O'Brien, and I'll move on to that point. And O'Brien, in discussing that additional pay for over eight hours' work, the court said that the regulations explain how to treat this mid-workweek contractual overtime payments under the act. Only the premium portion of the contractual overtime rate, that is the amount in excess of the employee's regular rate, is deemed overtime pay and may be offset. In other words, that portion is not in the regular rate. And so I think a close reading here, the court's analysis is entirely consistent on both prongs, shift differential and with respect to the additional pay. You can then turn it to Judge Kyle's question. Yes. Assuming O'Brien could be read otherwise, which I know you disagree with, why should we nonetheless read O'Brien to apply in circumstances in which there is a fixed salary, base wage, however you want to put it, and then some augmentations on the top that are unrelated to hours worked? Because there is no distinction between the two. Because the analysis that I think O'Brien made, which I've just espoused, is the correct analysis. The fluctuating workweek method is a departure from the presumption that the maximum workweek standard of 40 hours essentially is what an employee is paid for. And so to employ the fluctuating workweek, one has to have all of the requirements met under Section 144. And what you're arguing, basically, I think, is that for that fluctuating workweek method to be used, you can have nothing other than a fixed rate for a number of hours, whatever that number of hours is. There can be no kicker of any kind. Even if it's unrelated to hours. That is correct. If the kicker is a kicker that is included in the non-overtime compensation. So there could be premium pay that would be excluded under Section 207 of the FLSA. That would not be non-overtime compensation. So that would not cause the non-overtime portion of the pay to vary. But our position is that, yes, any compensation that's on top of a base wage that causes the non-overtime compensation to vary is inconsistent with the fluctuating workweek method. How do you square that with the regulations? And, by the way, I think every district court would consider this since O'Brien hasn't adopted your position. Well, respectfully, none of the courts have since O'Brien, save for the Lance Court, and I can speak to that, addressed commissions specifically. But I think what's important to look at is that when the DOL, and we don't rely on the DOL's rule, per se, but the Federal Register, which we have in our addendum, talks about the policy implications. And the court looks to these, excuse me, the DOL looked to cases post-O'Brien, like the Adiva case and others, that involved offshore pay and other types of pay where you got some sort of bonus on top of your base salary. And the court said that that's inconsistent with the fixed salary requirement. This is part of the, at least the argument is, this is part of the man's pay arrangement, the woman's pay arrangement. You get so much an hour fixed. And, in addition, based on your sales, you get a fixed percentage. That percentage is fixed. The only thing that varies is the amount of the kicker. And why doesn't that satisfy the regulations and satisfy every one of the four points? For the reason that O'Brien set forth, which is because the non-overtime pay is not fixed. O'Brien says very clearly a fixed minimum is insufficient. I believe, respectfully, Your Honor, that what you're describing is a fixed minimum. And it was a fixed minimum in the offshore cases that then followed O'Brien. If I understand it, just the premise of your argument is that unless you fit within the reg, unless the employer fits within the reg, they must pay time and a half per hour for every hour over 40? They must pay. Well, and this is a little bit of a semantic issue. The FLSA requires time and a half per 40. The question is can you spread the base wage or the salary over all hours worked rather than 40? That's really what Section 114 allows you to do. That was not my question. I'm sorry, Your Honor. If you're not within 114, if you're not within the reg, the fluctuating work week reg, what happens? What happens when you have the pay period? Anything that doesn't meet the reg. I don't care what it is. Okay, for whatever reason it doesn't meet the reg. Yes. What is the legal rule with respect to how an employee gets paid? Time and a half for over 40. Always. But that's true under the rule, too. And this is what I – Where do you get that from? Well, from the FLSA, Your Honor. Section 207 plainly says that you have to pay time and a half for every hour over 40. And with respect to what the fluctuating work week method does and what the regulation does, it says – Is the assumption of that that you've got a person with a fixed salary? There's no assumption about it. And this is the challenge. This is what the Missile case said, the early Supreme Court case said, is how do we reduce something to an hourly rate? How do we reduce something to a regular rate upon which time and a half will be paid for every hour over 40? What the fluctuating work week method allows an employer to do when the requirements are met is to treat the salary as being the non-overtime pay for every hour that he or she works. In other words, it's the time in time and a half. So it's the time for hours 1 through 40. It's also the time for hours 40 through 50, by way of example. It then allows you to say since you've compensated that employee for those 10 hours over 40, all you owe the employee is an additional 50 percent of that regular rate. That's an arrangement. But I guess you just sort of seem to be positing there can only be two arrangements. There's that arrangement, and then all other arrangements have to be understood as arrangements in which every hour over 40 is going to be paid time and a half. And I'm not seeing where you're getting that from. Respectfully, Your Honor, and again, I think it may be a matter of semantics, but every hour is always and has to be paid at time and a half. Right. In the way you want it paid. Well, no, no, and every – it is. I mean, that's not my argument. It has to be time and a half. The theory of the fluctuating workweek is that the time has been satisfied by the salary, but to get there you have to conclude that the salary has already compensated the employee at a sort of hourly rate for each hour over 40. And that's not the presumption because you've got a 40-hour maximum workweek. So if you're an hourly employee, by way of example, if you make $10 an hour, we know you're going to get those $10 in every hour you work, including the ones over 40. But what the fluctuating workweek does is say that the salary will also be that hourly rate for those over 40. The result of that, though, is that every hour you work, your hourly rate effectively goes down, which is antithetical to it. It's very much in tension with the purpose of the FLSA. But that doesn't happen with – the reg. It says fixed salary. That does not vary with the number of hours worked during the week. That seems to suggest that when they're talking about fixed salary, they're talking about fixed in relationship to the number of hours. And here it would seem that this salary is fixed in relationship to the number of hours. You then have a commission that is entirely independent of the number of hours. And then we have in the regs, I believe, the statement that the precise examples in the regs are simply examples. They're not the entire world of compliance. So how do you unravel that? If I may, Your Honor, with respect to the first part of your question, two points. One is the shift differential pay did not vary with the number of hours. So if the court looks at this court's decision in O'Brien and looks at the shift differential pay, there's no variation with the number of hours. It doesn't matter how many hours you worked. The offshore pay in the cases that follow O'Brien in which the Department of Labor in its final rule stated or getting it right, offshore pay doesn't vary with the number of hours. You're simply paid a premium because you happen to be working on a ship rather than onshore. So that's the first part of my answer. The second part is I would submit that under the regulatory scheme, the FLSA treats commissions as payments for hours worked. In other words, when you earn commissions, you are varying the pay with hours because you cannot make a sale unless you are working. This isn't like you get a performance bonus based on how the company performed. Did you argue below that the commission itself was based on hours? Candidly, Your Honor, I don't recall. Is that a legal observation or a factual observation? In other words, are you saying that the default presumption is commissions must be understood to be for hours, whether they are in fact or not, and then if they want to disprove that, they could? Well, I think it's a legal presumption. I will say, Your Honor, I do recall saying to the district judge that you're not making a sale if you're not working. So I think in that way the argument was made. And I think the answer is yes, that the reason that commissions are included in the regular rate, which they must be under the law, is because they're defined, I think it's 117, 778-117, as compensation for hours worked. It makes eminent sense. You're not earning sales commissions unless you're making sales. You're not making sales if you're not working. But when I hire you and I say to you I'm going to give you X dollars an hour and, in addition, a percentage, that's part of your pay. Correct. And so why does that not work within this rubric? Because the challenge, Your Honor, is that you haven't told me what you're going to pay me per hour. And so in order for an employee to have an understanding of what his pay is going to be, in an hourly context, we know I'm going to get $10. Yeah, but this only comes ultimately to the rate that you earn per hour. And there are two parts to that rate. One is the agreed fixed amount and the other is the amount that you get because you worked hard and you had good sales. So why doesn't that work? Why isn't that your hourly rate? Because under MISL and then under 114 and under O'Brien, the requirement is that you receive a fixed amount for straight time pay. And straight time pay is all non-overcut time compensation. Straight time pay includes the base wage you're paying me, Your Honor. It also includes the commissions you're paying me. Is the idea basically this is just a protective rule? We can't know in every circumstance where there's an extra bonus. We don't know whether it's an end run around the rule or not. Since it may or may not be, just as a prophylactic matter, we're going to disallow end runs by having a rule that even though it's not a perfect fit in every instance, any extra kind of pay, some will track hours like the extra hour pay in O'Brien. And some might not. Differential pay, offshore pay, this kind of pay. But we're just not going to get into that because it may be employers are pretty clever and can use these bonuses to, in effect, do an end run around the act. I think that's why the FLSA was passed. But if they're clever, then if we hold this way, then they'll just reduce the amount of the commission. Well, so that's an interesting – and, Your Honor, I realize my time is up. That's an interesting argument. I mean, you know, I won't go outside the record in the facts of this particular case. But I will say that I think that at the end of the day, there's sort of a level of obfuscation in having a pay scheme like this because you're shifting the risk to the employees. You're essentially – I mean, if the employee doesn't really make very many sales, let's say they're doing inventory, which may well happen in that time, then they're seeing their pay go down. I think the reality is that this would benefit employees to say, let's stop the gamesmanship. If you're going to pay a salary plus commissions, then the salary is based on a 40-hour workweek. If you want to pay using the fluctuating workweek method, then that's it. They know exactly what they're going to get paid every single solitary week. They don't have to worry about whether commissions are going to make up the difference. I think that's much fairer. Does that mean that in this case there's – but this is maybe not pled, that there was not a mutual agreement and that aspect of the reg wasn't satisfied? We don't plead. The odd thing about the way the case is pled is it's not mentioned. You attack one prong. You don't discuss the mutual agreement prong. But it seems like a premise of what you're saying now is that there was no mutual agreement, which I get that, but I don't quite know what we're supposed to do when you haven't argued that there was no mutual agreement. It seems like this is a case in which – and this is, I think, Judge Stahl's question. You agreed to this arrangement as a case comes to us, so then it's a little odd to be saying how unfair. It's a different case if you say, look, if you start looking at how this works, it makes it very unclear, therefore you shouldn't assume agreement. But is that our case or not? Well, I would say this. We have not – the standard for what agreement constitutes under the FLSA is pretty low. I mean, if the employer has said this is how we do it, then there's an agreement. And so we haven't challenged the fact that GNC has said this is how we do it. I don't think that changes the fact, however, that the question is still whether an employee essentially may agree to or has agreed to a fixed salary for straight-time pay. And there was no agreement for a fixed salary for straight-time pay because, in fact, the pay that they're receiving is not fixed. The non-overtime pay is not fixed. So there's not an agreement in the sense that I think that what they may agree to is what will enforce us forth. That's not what they were agreeing to. But we don't challenge that if we're wrong about the fixed salary requirement that GNC has disclosed that this is how they do it. If that answers your question. Thank you, Mr. Druszynski. Thank you. Mr. Pritchard. May it please the Court, my name is Rob Pritchard. I am counsel for Appley's General Nutrition Centers and General Nutrition Corporation. The issue before this Court is the same as the issue before the district court, and, in fact, the same as the question presented in any case presenting a Rule 12b-6 motion to dismiss. Does the complaint state a claim upon which relief can be granted under the applicable law? The applicable law in this case is the Fair Labor Standards Act itself, and particularly 29 U.S. Code Section 207A1, which provides that an employer must pay an employee at a rate of one and one-half times his or her regular rate for all hours worked in excess of 40 per week. Do you claim this is a fixed salary that you're paying here? Yes. GNC, as pled in the complaint, pays a fixed weekly wage. My colleague refuses to use the term salary to describe that amount, but in common parlance a fixed weekly wage that does not vary based upon the number of hours worked per week is commonly referred to as a salary. The semantics doesn't really matter for purposes of the outcome of this case. What matters is that Mr. Lally pleads in his complaint that he was paid a fixed weekly amount as compensation for all hours worked. And with respect to the policy arguments, of course, those are better left for Congress than for this Court. With respect to the agency, though, the agency might be a pretty good place to look for the policy argument. Does the agency treat offshore pay as something that kicks you out of the reg? Well, first of all, the agency, as the Supreme Court said in the 1940s. I understand. No, I know that, but we still give it some deference. So do they kick you out of the – does the offshore pay mean if you give offshore pay you don't fall within the rule, regardless of whether that offshore pay varies with the hours? No. In 2008, the Department of Labor promulgated or issued proposed regulations and the stated purpose of the proposed amendment to Section 114, not regulation, to clarify its longstanding view that any additional compensation on top of a fixed salary could be compatible and consistent with Section 114. Because, after all, the only rule that applies to any compensation scheme is wages divided by hours. And so when the arrangement is to pay a fixed sum plus other things, as long as all those other things are properly included in the overtime calculation, that's fine. And so in 2008, the Department of Labor proposed an amendment to 114 to clarify – not to change, but to clarify that 114 allowed for such types of additional pay, whether they be incentive bonuses or shift differentials or hours-based pay. It just didn't matter. And in that statement, the Department of Labor explained that why wouldn't it be that way? Why wouldn't we want to encourage employers who pay a fixed salary to non-exempt employees? And did that get adopted? It did not get adopted. That's what it sounded like. No, but it was a statement of the DOL's position. If we're talking policy statements. Well, don't they adopt their own positions? Who else would adopt it? Well, after a change of administration, the Department of Labor now has a different policy view. So what is the policy view now? Do they treat offshore pay as something that kicks you out of the rule? In the preamble to – so in 2011, after the change of administration, the Department of Labor announced that it would not be making the proposed changes. It did make some immaterial changes. Does that mean, as of today, DOL treats offshore pay as within the rule or not? As of today, the Department of Labor would say that hours-based pay, that hours-based additional compensation is not consistent with the idea of a fixed salary. That was not my question again. Well, offshore pay would be hours-based. Hours-based in the sense not number of hours, but just because it's an hour spent doing something offshore? Correct. So that would be just like shift differential pay? It would. Okay, could you explain how shift differential pay and offshore pay differ from a commission? Sure. It would be the same reason as all of the other courts that have considered this issue since O'Brien have recognized that distinction. And in particular, right before the motion to dismiss was filed, the Wills case out of the Southern District of New York. Basically, since O'Brien, the courts, the district courts, have aligned in two ways, all of which are reconcilable. There were some courts involving offshore pay, sea pay, holiday pay, and day-off pay. That's the Ayers, Brumley, and Adida case that were cited by Mr. Lally. And in those cases, like in O'Brien, the employee was held not to have been paid a fixed amount as a salary for all hours worked, because when they happened to work a certain hour in a certain place or at a certain time, that hour was automatically paid more. And so, as in O'Brien, those courts held that this was not a salary. It was not a fixed amount. It was, in fact, compensation. It was hourly in disguise as a salary. These people were paid more because of when they worked or where they worked. Well, when you have a shift differential, you have offshore pay. To pay the employee, do you basically need a time clock or something like it? Yes, these employees are all not exempt. Because you need to count up the number of hours they did on shift one versus the number of hours they did offshore on shift two. Yes. And that would be true in this case as well, Mr. Lally. So why would that matter? I understand the factual difference. But why is that a difference that matters with respect to commission? Because I can understand the argument that the number of hours varies, which is what O'Brien focuses on, right, in discussing it. But I'm having trouble understanding why just because we say the number of hours don't vary, but we like some hours more than other hours. Why is that a point that matters for purposes of determining whether the rule applies or not? Well, to be clear, it's GNC's position that none of it matters, that all compensation, as long as it's properly built into the regular rate calculation. Which is to say that it doesn't matter whether you fall within the reg or not. Correct. Okay, but just with respect to the reg's application. Right, and with respect, assuming if the court were to decide that GNC had to pigeonhole itself into one of the examples set forth in the interpretive bulletin, then the rule as explained by Wills and the other courts that Wills cited in its opinion would apply. And that is that an employee could work any number of hours and sell nothing and obtain no additional pay. They could work one minute and sell a ton of products and make a lot of commissions. The key language in the O'Brien case, which cited and described 114, is whether the employee must receive a fixed salary that does not vary with the number of hours worked. And the court in O'Brien, of course O'Brien was a very messy factual pattern. But it doesn't say type of hours, that's the problem. In the O'Brien case there were payments based upon the number of hours worked. No, I understand, but you say it's only that then? But you say DOL doesn't seem to follow that rule, because offshore pay does not vary with number of hours, it varies with type of hours. Well, it can vary with number of hours. But it doesn't have to. It doesn't have to. And they don't care whether it does or not, because they count all of it as kicking you out of the rule. Which is why there should be no distinction between any of these types of companies. And that's a reason for saying that under the FLSA you might win even if the rule doesn't apply. Correct. Okay, so one possibility is that the district court never passed on whether you win if the rule doesn't apply. Right, this is a de novo. So if you lose under the rule, you still could win, but presumably we'd remand for the district court to then consider whether there's a viable FLSA claim. No, this is an appeal from a motion to dismiss. It's de novo review and the court can affirm for any reason. Can. But the district court has never passed on that question. Has any district court, has any precedent ever addressed straight out the issue you're now asking us for the first time to address? Yes. Which is whether the FLSA decides this, even if you violate the rule? In a case exactly on point, the Hansen case out of the Southern District of Texas from this April. Southern District of Texas? Southern District of Texas. Is there any circuit that's ever ruled that way? Not with respect to Section 114, but with respect to Section 115. So it would be the same issue. If you don't comply with the rate, does it, or the interpretation. What circuit is that? Does it matter? So that was the Allen case from the 11th Circuit in 2007. That case involved Section 115, which talks about an employee who is paid two different rates, two different hourly rates, for working two different types of job. I work 30 hours in a $10 job and 20 hours in a $20 job. And how do I merge those two rates into a regular rate for purposes of complying with the rules set forth by the Supreme Court in the 1940s in the walling and overnight motor type of cases? If we put to one side liability, damages, and we're just going forward, why would an employer like GNC even care what the answer to this question was, as long as it knows what the answer is? Wouldn't it easily work around it either way? Well, the Supreme Court in the 1940s said it is not for the FLSA. The FLSA does not, and it is not the role of the courts to impose any conditions upon the infinite variety of rank. I'm asking a policy question so we can try to understand the real-world effects of things. Would this make any difference going forward to employers, the answer to this question? Wouldn't they just adjust the commission amounts or do something like that? Yes. I don't know. If the court were to hold that the payment of any additional compensation to a salaried, non-exempt employee destroys its ability to use the longstanding view of wages divided by hours equals regular rate, times one-half equals the overtime premium owed, then GNC or other employers could simply eliminate those other additional payments. It's ironic that Mr. Lally sold – Well, but presumably they want to motivate – Sure. Presumably they're paying them not – because they're Santa Claus, right? So how would they accomplish the goal that they're trying to accomplish by having the commissions? They could convert the employee to hourly, and at that point could adopt any hourly rate that applies. But they suffer the competitive effects in the labor market as a consequence, I assume in offshore pay where they don't get the benefit of the fluctuating work week. How do we have it? We don't know, I guess, from this record, how people who get offshore pay are, in fact, paid for overtime. Well, they're paid lots of different ways, and, again, not in the record. But, again, the Supreme Court back in the 40s said infinite variety of compensation schemes. And from personal experience, I know of lots of different types of offshore incentive pay that is offered to employees. And that really ties into a question you asked my colleague. Can I just – I mean, maybe this is a reason to think, though, that the rule is a bad lens through which to be trying to figure out this question, in the sense that the rule could be a safe harbor for employers. If you meet the strict requirements of the rule, you're off-scot-free, you don't have to worry about it. If you don't, then we would just look and we'd have a fight over what was the actual compensation agreement, what were the terms of it. You'd bargain it out. Whatever deal was then reached, there'd be an FLSA claim straight up, and it could be figured out. But, instead, this is all through this lens of this particular rule, which I get how it could benefit an employer. But if you don't meet the strict terms of it, I'm not sure what the relevance of it would be. The entire premise of your question is that Section 114 provides some sort of alternative to the basic traditional rule. I'm trying to understand, what is the point in your view of 114? 114 is an example of how an employer can comply with the rules announced by Walling and all the other Supreme Court cases. On your account, it seems like an unnecessary one. Because anything you did would be fine also. Why would you exemplify something? Which is exactly the point that the Supreme Court and even the earlier part of the bulletin make, which is we don't care what you do, employer and employee, with respect to your employment arrangement. But once you decide it, here will be the rules that apply to calculate the regular rate and overtime obligation. All of those rules follow from the same basic rule that was announced four times by the Supreme Court in the 1940s. Total wages for the week divided by total hours for the week is regular rate. That rate is paid for all those hours, naturally, because you divided dollars by hours. And so now you only owe the additional premium amount to come up to time and a half overtime compensation, as my colleague mentioned. The whole presumption of this is that they were already paid time for all hours worked. All that's left is and a half. It is not true that Section 114 sets forth some exception that allows an employer to pay less than time and a half. It couldn't. The statute says time and a half. It doesn't provide for the Department of Labor to establish exceptions. Suppose this were piecework. They were producing widgets, and the average employee produces one widget an hour. And you had a fixed salary of $500 no matter how many hours you worked, plus a commission of 50 cents per widget. Would that be okay under your definition? Absolutely. And that's actually just another provision. But wouldn't that commission plainly vary based on the number of hours? It's just a workaround. It takes one widget per hour instead of saying per hour we're going to do per widgets, per output. It's totally compliant. To your question, and you've now both mentioned end around, there's no way that a company can end around the obligation by saving some of the money for some other payment, like a commission payment or a bonus at the end of the year, because those payments have to be built into the overtime calculation also. GNC, and it was put in the complaint, the commissions were grossed up for overtime. So when an employee sold a product and earned a $2 commission on that product, and if we just look at that $2 in isolation, GNC would divide that $2 by the hours worked in the week to come up with the regular rate attributable to that component of their compensation and gross it up by an additional 50% for any overtime hour. All the money is grossed up for overtime. There can be no end around. Let me ask you a question. Let's assume I go to work for the widget manufacturer, and he says I'm going to pay you the minimum wage. However, it's going to be a little different than that. I'm going to give you a piece rate. And if you produce more than the minimum wage, you'll get the piece rate. If you produce less than the minimum wage, in other words, you don't get up to whatever I've been, you get the fixed rate of $2 an hour, whatever it is. How does that fit into this argument? That would be lawful, too, going back to the Supreme Court precedent. We do not interfere with an employer and employee's right to bargain for the terms of employment. But once they reach a bargain, the rest of the overtime calculation is math. It's a mathematical computation that the employer cannot manipulate any further. So in your situation, if an employee created no pieces, their hourly rate would be the minimum wage. If they created lots of pieces, their hourly rate for that week would be the piece rate value divided by the total hours worked. That's in the examples also. Just the puzzle is, and I understand the logic of what you're saying, it does seem like there's a surprisingly large amount of precedent and time spent by the Department of Labor working out an example that is actually irrelevant to work out. Because even if you weren't focused on that example, the employer would win every time anyway. Isn't that strange? It is strange. So doesn't that let some light on what the statute actually means, that it might be a bit more complicated than you're suggesting? Not at all, because in sections 108 and 109 of the bulletin, the Department of Labor essentially says, although this is not a notice and comment rule or anything,  how the rule of walling and overnight motor work in the real world. So there's an example about commissions. There's an example about a bonus. No one would suggest that an employee was only paid a bonus and no other compensation. So you can't read each example in isolation. There's an example about piece rates and job rates and day rates and hourly rates. And at the very beginning, in 108 and 109, the Department of Labor says, these are examples of how to do it. And one of the examples is an employee who's paid a salary. It doesn't say in that example, by the way, this is somehow special, and we prohibit any other form of additional compensation. We can simply merge 114's example about the salary with 118's example about how to do commissions and push them together. And the complaint pleads that GNC essentially did that. We took all the money earned in the week, divided by all the hours worked in the week to get a regular rate, and paid one-half of that amount as an additional overtime premium to bring the employee up to time-and-a-half overtime based on the regular rate calculated in accordance with established principles that were established by the Supreme Court back in the 40s. So with that, it appears that the complaint has, in fact, pled a method of computation that is entirely consistent with 29 U.S. Code 207-81, and we would request that the Court affirm the judgment of the District Court. Thank you. Thank you to both counsel. You do have two minutes. Should I withdraw my then? We'll see. I'll be very brief. Let me first speak to the issue of the import of 114. This Court in O'Brien indicated that it had previously given 114 finding effect because it is an interpretation of the Supreme Court's decision in Missle. That's entirely consistent with what the Seventh Circuit said in the Ernickus-Negro case in 2010. Section 114 is a reasonable construction of Missle. It has been given Skidmore deference. It may not deserve Chevron deference. I'm not going to get into an argument about the deference, but certainly it's been a longstanding interpretation of what the Supreme Court meant in the Missle case, which spoke only of a fixed amount for straight-time pay. And on that point, I would say I think that what's important to recognize here is that for this Court to rule in GNC's favor, it would have to conclude that O'Brien was wrong when it said that a fixed minimum doesn't cut it because that's the argument in its essence, is that you can have a fixed minimum and then add other stuff to it, putting aside the type of the work or anything else like that. O'Brien clearly says a fixed minimum doesn't count because it has to be a fixed amount for the straight-time pay, not overtime pay, period. And we think that that is entirely dispositive. Last point, the Wills case. Wills and Soderberg and Switzer all make a very big error. When they look to this Court's decision in O'Brien, they try to distinguish it by saying that in O'Brien, the additional compensation based upon how or when hours are worked violates the fixed salary requirement because it must be excluded from the regular rate. To the contrary, the reasoning in O'Brien was when it's included in the regular rate,  and that's what causes a violation of the requirement of a fixed salary. Unless there are any other questions, I appreciate the Court's time. Thank you. Thank you to both of you.